## Mellon Estate.

Argued May 24, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

*E. Russell Shockley,* Deputy Attorney General, with. him *Louis Rosenberg* and *James H. Duff,* Attorney General, for appellant.

*Elder W. Marshall,* with him *William M. Robinson* and *Reed, Smith, Shaw & McClay,* for appellee, Union Trust Company of Pittsburgh.

*Wm. S. Moorhead,* of *Moorhead & Knox,* with him *James M. Bovard,* for appellees, Richard King Mellon and Sarah Mellon Scaife.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, June 30, 1943:

This is an appeal by the Commonwealth from the decree of an orphans' court refusing to reopen a tax

proration proceeding under the Act of July 2, 1937, P. L. 2762, 20 PS Supp. 844, amending the Fiduciaries Act, as construed in *Jeffery's Est.*, 333 Pa. 15.

Richard B. Mellon, testator, died December 1, 1933, leaving an estate valued at $11,060,063.75. Prior to his death he had given to his wife, Jennie King Mellon, and to his two children, Richard King Mellon and Sarah Mellon Scaife, in equal thirds, 240,000 shares of the common stock of Aloxite Corporation valued at $75,499,053.11. The Commissioner of Internal Revenue, being of opinion that such gifts of stock were made in contemplation of death, included the value thereof in the federal estate tax assessment. This deficiency assessment, after protest and hearings, was acquiesced in by all parties.

The federal estate tax statement was as follows:

| | | |
|---|---|---|
| Total federal estate tax..... | | $37,567,602.59 |
| Returned tax, paid by Executors on filing of federal estate tax returns ..... | $ 1,743,343.89 | |
| Net deficiency payable to Federal Government ... | 22,500,000.00 | |
| 80% credit for "any estate, inheritance, legacy or succession taxes actually paid to any State or Territory or the District of Columbia in respect of any property included in the gross estate," under section 301 (b) of the Federal Revenue Act of 1926, as amended ..... | 13,324,258.70 | |
| | | $37,567,602.59 |

The record of satisfaction of such tax was as follows:

| | | |
|---|---|---|
| By payments to the Federal Government: | | |
| By Richard B. Mellon Executors ................. | $ 1,750,000.00 | |
| By Richard King Mellon. | 11,246,671.95 | |
| By Sarah Mellon Scaife.. | 11,246,671.94 | |
| | | $24,243,343.89 |

By credit on account of
   taxes paid by the Richard
   B. Mellon Executors to the
   following states in the fol-
   lowing respective amounts:

| | | |
|---|---:|---:|
| Pennsylvania | $13,309,847.50 | |
| Rhode Island | 12,911.20 | |
| West Virginia | 1,500.00 | |
| | | 13,324,258.70 |
| | | $37,567,602.59 |

Upon the tax deficiency payable to the Federal Government, there accrued interest of $2,937,959.12, one half of which was paid by Richard King Mellon and the other by Sarah Mellon Scaife.

It is to be noted that no part of this federal estate tax, aggregating with interest $40,505,561.71, was paid by Jennie King Mellon, who died November 15, 1938.

On May 2, 1939, one of the executors of the estate of Richard B. Mellon filed a petition in the orphans' court of Allegheny County, seeking proration of the federal estate tax under the provisions of the Act of 1937, supra. The prayer was for an adjudication of how much of said tax was the obligation of, and should have been paid by, Richard B. Mellon's executors, and how much thereof was the obligation of, and should have been paid by, respectively, Richard King Mellon, Sarah Mellon Scaife and the Estate of Jennie King Mellon. Citations were issued to these named parties, answers filed, and testimony taken. An order of proration was entered by the court as follows:

"Said tax of $37,567,602.59 was the liability and indebtedness of the following parties in the following respective amounts:

| | | |
|---|---|---:|
| Richard B. Mellon Executors. | (12.7775%) | $ 4,800,200.42 |
| Jennie King Mellon | (29.0741⅔%) | 10,922,467.39 |
| Richard King Mellon | (29.0741⅔%) | 10,922,467.39 |
| Sarah Mellon Scaife | (29.0741⅔%) | 10,922,467.39 |
| Total | (100%) | $37,567,602.59 |

Said interest, amounting to $2,937,959.12, which was due and payable upon said tax to the Federal Government, was due and owing by the following parties in the following respective amounts:

| | | |
|---|---|---|
| Richard B. Mellon Executors. | (5.9916%) | $ 176,030.76 |
| Jennie King Mellon | (31.3361⅓%) | 920,642.78 |
| Richard King Mellon | (31.3361⅓%) | 920,642.79 |
| Sarah Mellon Scaife | (31.3361⅓%) | 920,642.79 |
| Total | (100%) | $ 2,937,959.12" |

The Jennie King Mellon executors were directed, on account of that portion of the federal estate tax which was held to be her liability and indebtedness, to reimburse the Richard B. Mellon executors $10,274,058.28, and to reimburse Richard King Mellon and Sarah Mellon Scaife $324,204.55 each. They were also directed, on account of that portion of interest upon the federal estate tax which was held to be due and owing by Jennie King Mellon, to reimburse Richard King Mellon and Sarah Mellon Scaife, each, $460,321.39.

The Richard B. Mellon executors were directed, on account of that portion of interest which was held to be due and owing by them, to reimburse Richard King Mellon and Sarah Mellon Scaife $88,015.38 each. Exceptions were filed by the executors of Jennie King Mellon, which were dismissed by the court on November 13, 1939.

On March 25, 1941, upon petition of the Register of Wills, as agent of the Commonwealth for collection of the transfer inheritance tax, a rule was granted on all parties in interest to show cause why the proration proceedings should not be opened, the findings of fact set aside, and the order prorating the federal estate taxes and interest be vacated and the petitioner allowed to intervene and be heard. A similar rule was obtained by the executors of Jennie King Mellon. Preliminary objections and answers were filed by respondents. No further hearings were had, and apparently none were

requested. On November 10, 1941, the court below, upon review of the record, in which the Commonwealth actively participated, discharged the rules, and dismissed the petitions. This appeal by the Commonwealth followed.

The petition of the Commonwealth was properly dismissed. Its right to intervene in the present proceedings is rested upon an extremely tenuous foundation. It asserts first that it was a *necessary party* to the proration proceedings by virtue of its interest in the Estate of Jennie King Mellon for inheritance taxes which *might* have been collected had the estate proved solvent. Its contention that it had a "vested interest" in the estate is based upon a fundamental misconception of the incidence of the transfer inheritance tax. As recently as *Haid Estate*, 347 Pa. 159, this court has pointed out that the only property of a decedent subject to this tax is that portion of his net clear estate which passes to the distributees under his will or under the intestate laws. The tax is upon the *transfer* of property. It is not a tax upon the estate itself. The Commonwealth, therefore, having assessed no inheritance tax against the Jennie King Mellon estate, had no such interest as to make it a necessary party to every action brought against the estate. The Act of 1937, establishing the procedure for proration, certainly contains no requirement that the Commonwealth be joined.

The objection of the Commonwealth that it had no notice of the proceedings is likewise without merit because it has not shown that its status entitled it to such notice or that, as a possible creditor, it informed the executors of its desire to have notice of any such proceedings. The failure to give notice to the Commonwealth did not constitute a violation of any statute or rule of court.

The Commonwealth contends, however, that, regardless of its status as a necessary party, it was entitled to intervene in these proceedings by the Act of July 7,

1919, P. L. 731, 12 PS Sec. 145, which confers such right upon the State in "all cases at law or in equity" in which it may have "any interest." We do not accept the contention of the Commonwealth that this statute was designed to permit the Commonwealth to intervene at pleasure in any suit between third parties in which it claims an interest regardless of how remote, incidental or indirect such interest may be. This construction would authorize intervention by the Commonwealth in any proceeding upon the mere declaration of its officer or agent that it had an interest. We have held that the section has no such effect. See *Cameron v. City Bank of York,* 284 Pa. 187. Here the Commonwealth bases its claim upon the fact that if the proration decree is permitted to stand, the estate of Jennie King Mellon will be insolvent, and hence the Commonwealth will be deprived of what inheritance tax it might otherwise have received. Such reasoning would justify intervention by the Commonwealth in any suit brought by a creditor against an estate and, if carried to its extreme, might confer the right upon the Commonwealth to intervene in suits between living persons upon the possibility that the estate of one or the other might be diminished, with a consequent putative loss to the Commonwealth in inheritance taxes upon his death.

We need not, however, decide the merits of the Commonwealth's claim of interest, because its petition to intervene is clearly barred by laches. The Act of 1919, supra, contemplates intervention in pending suits; it does not authorize the Commonwealth to intervene at any time for the purpose of destroying judicial determinations long since concluded. While no express limitation is placed upon the time within which intervention by the Commonwealth may be effected, we held in *Commonwealth's Appeal (White Twp. School Dist.),* 305 Pa. 263, that the Commonwealth must make itself heard "in due season 'as other parties litigant' would be required to do." It is apparent that this principle is a

necessary corollary to the policy of our law that there must be a definitive end to litigation, and that decrees and judgments, unappealed from, are entitled to protection in the interest of legal certainty. In the present case it is true that the five-year period of review had not expired, but this, in itself, does not justify the delay of the Commonwealth. The decree which the Commonwealth seeks to open was entered in 1939. Through its officer, the Register of Wills, the Commonwealth was familiar with the affairs not only of the Richard B. Mellon estate but also of the Jennie King Mellon estate. The Commonwealth admits that it had notice of the decree after the filing of the inventory and appraisement in the latter estate on February 23, 1940. Obviously there was an unwarranted delay in the filing of its petition, which under *Commonwealth's Appeal (White Twp. School Dist.)*, supra, was fatal to its right.

Despite the fact that the court below dismissed the Commonwealth's petition, it is clear from the record that it actually reviewed the proration proceedings and affirmed its decree. The Commonwealth offered no new evidence, and asserted at the bar of this court that it had no intention of so doing. In this circumstance, it has little cause to complain of the refusal of its petition, because the action of the court below, in substance, afforded the Commonwealth the review that it sought. Regardless of the Commonwealth's right to such a review, it was within the power of the court itself to review its decree. See *Huff's Estate*, 300 Pa. 64; *Willing's Estate*, 288 Pa. 337; *Sloan's Estate*, 254 Pa. 346. As the court below has seen fit to do so, we have also studied the record of the proration proceedings, and have concluded that there was no error in the decree.

Section 1 (a) of the Act of 1937, supra, provides for apportionment of any estate tax levied "under the provisions of any estate tax law of the United States" or under the provisions of the Act of May 7, 1927, P. L. 859, 72 PS Sec. 2303, imposing an additional estate tax pay-

able to the Commonwealth to enable it to have the full advantage of the credits allowed by the federal law for taxes paid to the states. Such apportionment is to be made "Whenever it appears upon any accounting or in any appropriate action or proceeding that an executor, administrator, temporary administrator, trustee, or other person *acting in a fiduciary capacity"* has paid such estate taxes and that such taxes, "except in a case where a testator otherwise directs in his will, shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred, or to whom any benefit accrues." The Act provides further that, "the term 'persons interested in the estate' shall, with respect to both State and Federal taxes, include all persons who may be entitled to receive, or who have received, any property or interest which is required to be included in the gross estate of a decedent, *or* any benefit whatsoever with respect to any such property or interest, whether under a will or intestacy, or by reason of any transfer, trust, estate, interest, right, power or relinquishment of power, taxable under any of the aforementioned laws, providing for the levy or assessment of estate taxes." It is directed that: "The tax shall be paid by the executor, administrator, or other fiduciary as such out of the estate before its distribution. In all cases in which any property required to be included in the gross estate does not come into the possession of the executor, administrator or other fiduciary as such, he shall recover from whomever is in possession, or from the persons interested in the estate, the proportionate amount of such tax payable by the persons interested in the estate with which such persons are chargeable under the provisions of this section, and the orphans' court may, by order, direct the payment of such amount of tax by such persons to the executor, administrator or other fiduciary."

Subdivision (b) supplies the method whereby the orphans' court shall determine and carry into effect the proration authorized by subdivision (a).

In attacking the decree of the court below, the Commonwealth first contends that since the tax was paid by the personal checks of Richard King Mellon and Sarah Mellon Scaife, such payment was made by them as individuals and not as fiduciaries, and the Act does not apply. This is a highly technical contention and is not substantiated by the record. It appears from the letters sent to the Collector of Internal Revenue by these two persons that the payments were made by them both in their individual and fiduciary capacities. As executors of the estate of Richard B. Mellon, they were responsible for the payment of the estate tax in that capacity (Act of February 26, 1926, Ch. 27, Sec. 305 (a), 44 Stat. 74, 26 U. S. C. A. Sec. 305 (a) 1926); and as transferees of the property upon which the deficiency assessment was based, they had individual liability (Act of 1926, supra, section 315 (b), 26 U. S. C. A. Sec. 315 (b) 1926, as amended by the Act of June 6, 1932, Ch. 209, Sec. 803 (c), 47 Stat. 280). They were also subject to individual liability under Section 3467 of the Revised Statutes, 31 U. S. C. A. 192, because, as executors, they had joined in the payment of the debts of the decedent prior to the payment of the tax deficiency. The record shows that their payments were intended to discharge the liability of the estate, as well as to save themselves from personal responsibility. They were entitled to use their own funds for both purposes. See *Bentley's Est.*, 196 Pa. 497. In an equitable proceeding of this sort, the court is concerned with substance rather than form. We have no hesitancy in holding that insofar as they paid the estate tax over and above their respective interests in the estate, they did so as fiduciaries within the meaning of the Act of 1937.

We are equally unimpressed by the argument of the Commonwealth that the Act of 1937 applies only to those who derive a "benefit" from the portion of the estate taxed, and that Jennie King Mellon received no such benefit from the Aloxite stock because of her prompt

transfer of her 80,000 shares to a corporation in which Richard King Mellon and Sarah Mellon Scaife owned all of the common stock. The Act expressly provides that the apportionment of the tax shall be "among the persons interested in the estate to whom such property is . . . transferred," and defines "persons interested in the estate" as those "who may be entitled to receive or have received any property or interest which is required to be included in the gross estate of a decedent." The phrase "or any benefit whatsoever," is clearly disjunctive. Certainly Jennie King Mellon, by receipt of the 80,000 shares of stock, fell within the above definitions.

The Commonwealth's assertion that her subsequent disposition of the shares was by prior agreement with the testator, and that she was merely a conduit whereby the stock was transferred by the testator to Richard King Mellon and Sarah Mellon Scaife is unconvincing. There is no competent evidence whatever to substantiate this allegation. On the contrary, it appears that Jennie King Mellon retained during her lifetime the preferred shares of the two corporations to which the Aloxite stock was successively transferred, and that she derived therefrom a considerable income. The court below has found as a fact that she was a transferee of 80,000 shares, and that finding is well supported. What she did with the shares after the transfer was her own concern, and did not in any way affect her liability as transferee for the payment of her proportionate share of the estate taxes upon the value of this property.

The Commonwealth insists that the tax deficiency was levied upon Richard King Mellon and Sarah Mellon Scaife individually by the federal taxing authorities and that this constituted a binding determination that they were the sole transferees of the entire 240,000 shares of Aloxite stock. The letters of the Deputy Commissioner to these two transferees do refer to each as the transferee of 120,000 shares of such stock, despite the fact that Jennie King Mellon was at that time living

and enjoying income from the stock as owner of the preferred shares of the corporation by which they were then held. Nevertheless, in the accompanying statements of the gross taxable estate, the Deputy Commissioner expressly refers to "240,000 shares of the common stock of Aloxite Corp. *transferred in equal shares to decedent's wife and two children on May 11, 1932.*" Whether the Deputy Commissioner intended by his apparently contradictory remarks to refer to Sarah Mellon Scaife and Richard King Mellon as the ultimate transferees of the stock, or whether this was merely an error, is not clear, nor is it material to our question. Under the Revenue Acts, the value of this stock, which had not come into the hands of the executors of the estate of Richard B. Mellon, was taxable individually to the three transferees who received it from Richard B. Mellon. Their liability was joint and several. See *Phillips-Jones Corp. v. Parmley,* 302 U. S. 233. In its enforcement, the Commissioner had absolute discretion to proceed against all, or one, or several, of the transferees for the collection of the whole tax. (*Cf.* Treasury Regulation 70, Article 87.) With his election to proceed only against Richard K. Mellon and Sarah Mellon Scaife the courts of this State have no concern, and they could not, by any decree, compel the Commissioner to proceed otherwise. This, however, does not determine, for the purposes of proration under the Act of 1937, the respective shares of the tax to be borne by the transferees. The method of collection may have involved inequality of payment, but the purpose of the Act of 1937 was to achieve equality of contribution.

Consideration of the incidence of the federal estate tax and of the provisions of the Act of 1937 make it clear that the purpose of the General Assembly was to relieve distributees of inequalities which might result from the imposition of that tax. The estate tax, unlike the normal State inheritance tax, is a tax upon the property of the decedent. Unless the decedent has other-

wise provided by will, payment of the tax is to be primarily the burden of the executors, and the interest of the distributees is to be diminished pro tanto by the payment of the tax prior to distribution. This was pointed out in *Jeffery's Est.*, supra. It is entirely foreign to the purpose of the legislation to suppose that the equality which it desired to create in distributing the tax burden could be thwarted by an arbitrary act of the federal taxing officer in proceeding for collection against one or more of the several persons jointly and severally liable.

The Commonwealth also contends that the court below, by including interest upon the deficiency assessment of the estate tax in the proration, exceeded its authority under the Act, or gave to the Act an unconstitutional application. The title of the Act refers to the apportionment of "estate taxes" only, and it is argued that interest upon a tax is not, in itself, a tax. Numerous cases are cited illustrating circumstances in which this principle has been applied. The Commonwealth, however, overlooks the fact that the Revenue Act of 1926, Sec. 308 (h), 26 U. S. C. A., Sec. 308 (h) 1926, expressly provides that, "Interest upon the amount determined as a deficiency shall be assessed at the same time as the deficiency, shall be paid upon notice and demand from the collector, and shall be collected as a part of the tax." Since the Act of 1937 deals with the federal estate tax, and so indicates by its title, and since that tax, by Act of Congress, includes "as a part of the tax" interest upon deficiency assessments, it is clear that the Act of 1937 contemplates proration of such interest and that notice to this effect is amply afforded by the title. It may be noted, in passing, that as the proration of this interest would not in any way affect the solvency of the Jennie King Mellon estate, the interest of the Commonwealth in this portion of the decree does not appear.

A similar objection is made by the Commonwealth that the court below improperly prorated credits for

inheritance taxes paid to the Commonwealth and to other states. These credits amounted to the sum of $13,324,258.70. It is urged that the Act of 1937 contemplates the apportionment only of the net payment of the federal estate tax made by fiduciaries, and therefore that there is no authority for the proration of *credits* against the gross tax, representing payments by the fiduciaries of normal state inheritance taxes. We believe that this construction of the Act is too narrow and is inconsistent with the legislative intention to effect equality of apportionment. The Act does not state, as the Commonwealth contends, that only the net sum actually paid in cash to the collector of the estate tax is to be apportioned. It provides that the "estate tax" paid by the fiduciary to the Federal Government and the additional Pennsylvania estate tax paid by the fiduciary shall be apportioned. The Federal Government assessed a total estate tax of $37,567,602.59 against the Richard B. Mellon estate. That tax was paid by the executors in part by cash and in part by credits. The credits constituted part of such payment within the meaning of the Act of 1937, and we so hold. The reasons or policy which motivated the Federal Government in permitting the estate tax to be so discharged in part, need not here concern us. *Cf. Knowles's Est.*, 295 Pa. 571.

The fact that the court below directed payment of the prorated shares of the tax to Richard King Mellon and Sarah Mellon Scaife directly, rather than indirectly, by payment to the executors of the Richard B. Mellon Estate, has not injured appellant in any way, and has not violated the equitable purpose of the Act of 1937.

Although we have concluded that the proration decreed by the court below was in accordance with the provisions of the Act of 1937, it does not necessarily follow that this apportionment could not have been effected upon equitable principles governing contribution, exoneration and the marshalling of assets. The three transferees of that portion of the estate of Richard B.

Mellon which was to be subject to a deficiency assess-
ment were, under the Revenue Acts, jointly and severally
liable for the payment of the tax. *Phillips-Jones Corp.
v. Parmley,* supra. Section 314 (b) of the Revenue Act
of 1926, 26 U. S. C. A. Sec. 314 (b) 1926, provides: "If
the tax or any part thereof is paid by, or collected out
of that part of the estate passing to or in the possession
of, any person other than the executor in his capacity
as such, such person shall be entitled to reimbursement
out of any part of the estate still undistributed *or by a
just and equitable contribution by the persons whose
interest in the estate of the decedent would have been
reduced if the tax had been paid before the distribution
of the estate or whose interest is subject to equal or prior
liability for the payment of taxes, debts, or other charges
against the estate,* it being the purpose and intent of
this title that so far as is practicable and unless other-
wise directed by the will of the decedent, the tax shall
be paid out of the estate before its distribution."

It is clearly the intention of the Code that persons
required to pay the tax should be restored by the equi-
table principle of contribution to the position in which
they would have been had the tax been initially paid
out of the estate prior to distribution. Richard King
Mellon and Sarah Mellon Scaife were not volunteers in
paying the tax. The joint and several liability of the
three transferees had been enforced against them by the
Commissioner. As stated in Bispham's Principles of
Equity (10th ed., 1922), Sec. 328: "The equity of Con-
tribution arises when one of several parties who are
liable to a common debt or obligation discharges the
same for the benefit of all. . . . The application of this
equity is seen most frequently in the case of sureties;
but it will, of course, be borne in mind, that the rules
stated in regard to this particular class of debtors are,
in general, true as to all parties who are liable in com-
mon to a debt or charge of any kind."

The equitable principle of contribution has long been
enforced in this Commonwealth on principles of nat-

ural justice. See *Horbach's Administrators v. Elder,* 18 Pa. 33; *Armstrong County v. Clarion County,* 66 Pa. 218; *Commonwealth v. American Surety Co. of N. Y.,* 315 Pa. 428. An examination of those cases and the principles expressed indicates clearly the applicability of the doctrine to the circumstances of the present case. We are aware that certain lower court decisions in this Commonwealth have cast doubt upon the right of contribution for estate taxes paid by one of several persons jointly liable. We believe that the reasoning in these cases is unsound; and in *Jeffery's Est.,* supra, although the subject was expressly left open, we refused to affirm the holding of the court below that the equitable principle of contribution would not apply to the apportionment of such taxes. In the present case we believe that the decree could be sustained either upon the terms of the statute or upon the broad principle of equity here discussed.

The order of the court below is affirmed; costs to be paid by appellant.