## York Estate

*Karl Y. Donecker* and *Donald L. LaBarre*, for accountants.

*Morris L. Shafer*, for exceptant.

*Harold A. Butz*, guardian, for Sandra Ann York.

GEARHART, P. J., October 4, 1950.—Warren W. York and his wife, Jeanne M. York, perished in a common disaster on November 18, 1948. Warren W. York left a last will and testament dated November 10, 1948, which was duly probated before the Register of Wills of Lehigh County on February 28, 1949. Letters testamentary were granted to the present accountants, Robert V. H. Harned, Leland E. Smith and Daniel Van Dyk. They have filed their first and partial account, which is before us for audit. . . .

A number of other questions for adjudication have been submitted. The first question is whether the first paragraph of decedent's will is sufficient warrant for executors to pay the entire Federal estate tax from the assets of decedent's estate, without imposing upon the executors the duty to recover a portion of the Federal estate tax from Barbara Ann York Covert and Sandra Ann York, as beneficiaries under life insurance policies totalling $58,000 on the life of their deceased father.

The first paragraph of testator's will provides:

"First: I authorize and direct my hereinafter named Executors to pay all my just debts, funeral expenses

and any and all inheritance, transfer or estate taxes, whether the same be levied by the Federal Government or any of the states of the United States, from and out of my estate, as soon as may be convenient after my decease."

The question is whether the Tax Apportionment Act of July 2, 1937, P. L. 2762, is applicable, in view of the above provision of the will. The Apportionment Act by its express terms excludes all cases where testator otherwise directs by his will how the tax shall be paid. The act provides that the apportionment shall be among the "persons interested" and that persons interested in the estate "shall, with respect to both State and Federal taxes, include all persons who may be entitled to receive, or who have received, any property or interest which is required to be included in the gross estate of a decedent, or any benefit whatsoever with respect to any such property or interest, whether under a will or intestacy, or by reason of any transfer, trust, estate, interest, right, power or relinquishment of power, taxable under any of the aforementioned laws, providing for the levy or assessment of estate taxes": Mellon Estate, 347 Pa. 520, 529.

The act also directs that the tax shall be paid in the first instance by the executor or administrator out of the estate before distribution, and in cases where the property required to be included in the gross estate does not come into the possession of the executor, administrator, or other fiduciary as such, he shall recover from whomever is in possession: Mellon Estate, supra, 529.

Unquestionably, there was included in the gross estate the proceeds of these life insurance policies which did not come into the hands of the executors, which, under the act of Congress, it became the duty of the executors to pay.

Mr. Justice Horace Stern, writing the opinion in Stadtfeld Estate, 359 Pa. 147, 150, stated:

"The Proration Act of 1937 does not conflict with the purpose of Congress regarding the federal estate tax; Congress intended that the tax should be paid out of the estate as a whole and that the applicable state law should govern its ultimate impact, the federal government not being interested in the distribution of the estate after the payment of the tax: Riggs v. Del Drago, 317 U.S. 95. The Proration Act does not itself enact tax legislation; it merely directs the apportionment of the estate taxes paid under the authority of other laws, federal and state, and facilitates their recovery from the persons liable."

And in the same opinion, at page 152, the act "creates a *presumption* that a testator intends that proration should be made in accordance with its terms unless his will contains a specific provision, clearly expressed, inconsistent with such presumption, and, to accomplish that result, his language must not be of doubtful import".

Did the provisions of this will clearly express a direction inconsistent with the presumption created by the act? We think the words used by testator are sufficiently clear to indicate that he wanted "all inheritance, transfer or estate taxes, whether the same be levied by the Federal Government or any of the states of the United States" to be paid out of his estate. The tax in question is an estate tax and is levied by the Federal Government. Testator in plain words directs that this shall be paid out of his estate. He then continues in his second paragraph to direct that his "executors shall retain either as Executors or Trustees the entire rest, residue or remainder of my estate, whether real, personal or mixed, of whatsoever nature and wheresoever situate, for a period of three (3)

years after my decease", etc. What he gives to his executors or trustees is that which remains after the payment of inheritance, transfer, estate taxes, etc.

Decedent was a successful business man and stock broker, familiar with the various inheritance, transfer and estate taxes levied by the Federal Government and the State of Pennsylvania. It is apparent that he was interested in having these taxes disposed of before his estate was set up in trust. Testator spoke not only of taxes levied by his own State, but mentioned "or any of the states of the United States", having in mind the complications frequently encountered in paying taxes to the various States.

While at first blush it may appear that the instant case is governed by Moreland Estate, 351 Pa. 623, and Stadtfeld Estate, supra, it is distinguishable in its main aspect. In Moreland Estate decedent directed that "each and every bequest made by me in this my last will and testament shall be free and clear of any and all Federal Inheritance Tax and free and clear of any and all Pennsylvania Collateral Inheritance Tax". In the latter case the direction was limited to "each and every bequest made by me in this my last will and testament." It related only to the bequests and legacies which passed under the will, whereas in the case before us, there is a direction to pay "all inheritances, transfer or estate taxes, whether the same be levied by the Federal Government or any of the states of the United States", etc.

Mr. Justice Horace Stern, writing the opinion in the Moreland Estate, recognized this distinction when he said, at page 632:

"Nor is there anything in the will which can be construed as indicating an intention on the part of decedent that the portions of the federal estate taxes due by reason of such extra-testamentary property should be

paid out of the residuary estate instead of by the beneficiaries themselves."

Again, in Stadfeld Estate, supra, the Supreme Court pointed out, page 152, that testator directed that inheritance, estate, succession or similar taxes "which shall become payable in respect to any property or interest passing *under my will* or any codicil . . . shall be paid out of the principal . . . without diminution of any devises, bequests or legacies". (Italics supplied.) With respect to that, Mr. Justice Horace Stern, writing the opinion of the court, said:

"It would seem too clear for discussion that this provision is wholly silent with regard to estate taxes on property *not passing under the will* and therefore is not broad enough to cover property which, though not so passing, is subject to the federal estate tax because of its constituting part of the decedent's gross estate".

On the other hand, in several lower court cases, the courts have held that the Apportionment Act has no application where testator directs in his will how the tax is to be paid. In North's Estate, 50 D. & C. 703, Judge Ladner, now Mr. Justice Ladner, pointed out that testatrix's provision that all "inheritance, estate and transfer taxes as imposed by the State of Pennsylvania or any other state or by the United States" was sufficient direction to take it out of the Apportionment Act. Said Judge Ladner (page 704):

"In other words, this testatrix has prescribed her own formula as to the manner of apportionment of taxes, if such it may be termed, as between her individual estate and the appointed estate."

Judge Klein, in writing the opinion in the same case for the court en banc, stated (page 706):

"In our opinion, the direction to pay the estate taxes 'out of the corpus or principal of my residuary estate' indicates that testatrix intended that all taxes be paid in full before distribution is made of the residue." See

also Cunningham's Estate, 69 D. & C. 579; Prifer's Estate, 53 D. & C. 103; Crooks' Estate, 36 D. & C. 58.

Accordingly, we rule that the Pennsylvania Tax Apportionment Act of 1937 is not applicable to the case at hand, since testator by his will has indicated the manner in which the Federal estate taxes are to be paid, i.e., out of his estate without liability upon his two daughters to personally pay the tax on the proceeds of the insurance policies.

The second question presented is whether the bequests to religious, charitable and educational organizations and institutions referred to in paragraphs 2 and 6 of decedent's will, are valid. By the terms of the will testator placed in trust the estate remaining after the payment of debts, funeral expenses and taxes, for a period of three years, the income to be divided two fifths to his wife, one fourth to each of his two children, and one tenth to be distributed by his executors and trustees to such religious, charitable, and educational organizations and institutions as testator contributed to during his lifetime, giving the executors sole discretion within these limits to select the organizations and the amounts to be awarded.

In the third, fourth, fifth, sixth and seventh paragraphs of his will, testator disposes of the corpus of his estate, which is to take place three years after the date of his decease. In the sixth paragraph among other things, he gives one tenth of his estate to his executors and trustees with directions to expend $5,000 for the schooling and education of children of his sister, Gladys York Christensen, and to pay the balance of the interest unto the Board of Trustees of Lehigh University of Pennsylvania as a scholarship fund, etc. In the seventh paragraph of his will he bequeaths one tenth of his residuary estate to religious, charitable and educational organizations to be selected by his executors and trustees in their discretion.

As previously indicated, decedent died within 30 days of making his will. Thus, the first question that arises is whether the charitable bequest contained in item 2 of the will, disposing of the residuary income, can be sustained.

Section 7 (1) of the Wills Act of April 24, 1947, P. L. 89, provides:

"Death Within Thirty Days; Religious and Charitable Gifts.

"Any bequest or devise for religious or charitable purposes included in a will or codicil executed within thirty days of the death of the testator shall be invalid unless all who would benefit by its invalidity agree that it shall be valid. . . . Unless the testator directs otherwise, if such a will or codicil shall revoke or supersede a prior will or codicil executed at least thirty days before the testator's death, and not theretofore revoked or superseded and the original of which can be produced in legible condition, and if each instrument shall contain an identical gift for substantially the same religious or charitable purpose, the gift in the later will or codicil shall be valid; or if each instrument shall give for substantially the same religious or charitable purpose a cash legacy or a share of the residuary estate or a share of the same asset, payable immediately or subject to identical prior estates and conditions, the later gift shall be valid to the extent to which it shall not exceed the prior gift."

There was submitted at the audit an earlier will dated September 25, 1947, which was superseded by the will under discussion. The first paragraph of the earlier will, with respect to payment of debts, funeral expenses and taxes, is identical. The wording of the second paragraph of the earlier will and that of the second paragraph of the instant will is identical, with the exception that in the earlier will the executors were

to hold the residuary estate and pay the income for a period of five years instead of three years as in the later will. As respects the income to be distributed to charities, in the earlier will testator allocated one sixth of the net income for that use, whereas in the later will one tenth of the income is allocated. The paragraphs dealing with the charitable bequests are otherwise identical in wording, except for the omission of the word "religious" before "charitable and educational organizations" in the instant will.

Undoubtedly, under section 6 of the Wills Act of 1917, which section 7 of the Wills Act of 1947 replaces with additions, the gift to charities would fail, this regardless of the similarity between the two instruments: Hartman's Estate (No. 1), 320 Pa. 321.

The last sentence of section 7(1) of the Wills Act apparently was enacted to embrace cases in which testator has been charitably inclined and then changes his will in some respect within 30 days of his death. Hartman's Estate, supra, is a good example. See comment of the commission.

In the case at bar, the instruments do not contain "an identical gift for substantially the same religious or charitable purposes". However, the purpose of the gifts is substantially the same, but the share of the residuary estate given to charity is reduced in the later will from one sixth to one tenth, and the period during which the income is to be expended by the executors-trustees for charitable uses is reduced from five years to three years.

We are of the opinion that the facts of this case meet the conditions prescribed in the latter half of the last sentence of section 7 (1) of the Wills Act. The second will gives for the same charitable purpose, the share is of the income of the residuary estate in a lesser

amount, and the income is payable immediately for a period of three years.

In our interpretation of the act we do not perceive a prior estate. The income in this case is payable to the beneficiaries immediately in the proportions set forth in the will. The fact that the term of years is reduced from five years to three years in the later will is therefore inconsequential, so far as concerns the validity of the bequest. It is in effect a reduction of the amount which the charities will receive; i.e., they will receive income for three years rather than five as in the earlier will. The gift in the later will being less than the gift given in the earlier will, meets the requirements of the last line of section 7(1). For an interesting discussion on the entire subject, see Bregy on Intestate, Wills and Estates Acts of 1947, pages 2451 to 2464, inclusive.

Accordingly, we rule that the charitable bequest contained in item 2 of the testator's will, disposing of income, is valid.

The question of the validity of the charitable gifts contained in items 6 and 7, disposing of the corpus at the expiration of three years from testator's death, can be adjudicated at that time. This is especially so in view of the fact that counsel have represented to the court that the two children, Barbara Ann York Covert and Sandra Ann York, are desirous of having their father's will carried out with respect to the charitable bequests. Barbara is of age and would be in a position to give her consent, and we are informed that at the end of three years, Sandra will have reached her majority. Thus, at that time, the question may resolve itself by agreement of parties, and this is in consonance with section 7(1) of the Wills Act, which provides how the will-given gift may be validated by the consent "of all who would benefit by its invalidity".

Another question submitted for adjudication concerns the interest of this decedent in the estate of his deceased father, Samuel F. York. Samuel F. York died a resident of Lackawanna County, where his will was duly probated and where proceedings concerning that estate have been before the orphans' court. Without going into details, it is sufficient to say that the question is raised here in order to secure an interpretation of the will of Samuel F. York. With this will and the interpretation thereof, we have nothing to do. That is a matter for the Orphans' Court of Lackawanna County. Presumptively at least, this decedent had an interest in the estate of his father, Samuel F. York, and the accountants were quite right in appraising the value of that estate. It is their duty to press their claim at the proper time and place, and the place is in the Orphans' Court of Lackawanna County. Nothing more need be said with respect to this query.

Another question propounded to the court refers to the legacy in the second paragraph of the will, wherein testator provides that two fifths of the net income shall be paid to his wife, Jeanne M. York, for a period of three years. Jeanne M. York, having been killed with decedent in a common airplane disaster, and there being no evidence that she survived decedent, the bequest to her must be considered as having lapsed. See Uniform Simultaneous Death Act of June 19, 1941, P. L. 138, 68 PS §521.

Testator has failed to provide for the contingency of death of an income beneficiary during the three-year period. The question now arises as to what disposition should be made of two fifths of the net income which has accrued from the date of testator's death to the filing of the account, and which amounts to $8,853.50. Counsel for the executors frankly informed the court that he has been unable to find any case directly involving the present question.

No demand has been made at the audit by any of the interested parties for their income, although the accountants have suggested in their distribution that the court should award this two fifths portion of the income to the executors as trustees until the expiration of three years from the date of decedent's death, at which time distribution, it is suggested, should be made to "the other residuary devisees or legatees . . . in proportion to their respective shares, or interests in the residue".

Counsel has suggested that testator had in mind a period of administration, i.e., three years. That having failed to provide for the distribution of income in the event of the death of a legatee, that the income be held during the administration period and then distributed in accordance with the distribution of corpus as set forth in the later paragraphs of the will. We cannot agree with this proposal. In the first place, with respect to his residuary estate, testator disposed of the income on the same for a period of three years. At the end of this period, he directed distribution of corpus to some legatees other than those given income. With respect to his residuary estate, testator patently separated income from corpus. The general rule to be gleaned from the cases hereinafter cited is that income goes to income beneficiaries and principal to principal beneficiaries. The will of testator seems to be in accordance with this principle.

What we are here dealing with is the income portion of the residuary clause of the will. We have thus a bequest found in the residuary clause of the will which fails because beneficiary did not survive testator: Uniform Simultaneous Death Act of June 19, 1941, P. L. 138, 68 PS §521. This situation is provided for in sections 14(9) and (10) of the Wills Act of 1947. Section 14(10) provides:

"(10) Lapsed and Void Devises and Legacies; Shares in Residue.

"When a devise or bequest as described in clause (9) hereof shall be included in a residuary clause of the will and shall not be available to the issue of the devisee or legatee under the provisions of clause (8) hereof, and if the disposition shall not be otherwise expressly provided for by law, it shall pass to the other residuary devisees or legatees, if any there be, in proportion to their respective shares or interests in the residue."

This section replaces the second sentence of section 15(c) of the 1917 Act. See comment of commissioners.

In Morgan's Estate, 340 Pa. 465 (1941), the will gave a life estate to testator's wife with power to consume, with remainder to a named individual and two charities. The gifts to the two charities were void. In that case it was held that upon the death of life tenant, against the claim of the next of kin of a testator of an intestacy concerning two thirds of the residue, that the individual residuary beneficiary, under section 15(c) of the Wills Act of 1917, took the entire residue. In that case, Judge Stearne, then of the Orphans' Court of Philadelphia, and on whose opinion the Supreme Court affirmed the lower court's decision, quoted from McNulty's Estate, 29 Dist. R. 709, 711, where Judge Gest wrote:

"The obvious intention of the act [section 15(c) of the Wills Act] was to introduce the principle that in devises of this nature the void or revoked share is to be divided among the other residuary devisees in proportion to their respective interests. This contemplates the case where the residuary devisees are given aliquot shares in the residue, and not to a case like the present, where the devisees are respectively life-tenant and re-

mainderman and thus given estates of a different quality".

Morgan's Estate, supra, and McNulty's Estate, supra, stand for the proposition that income beneficiaries will not share as other residuary devisees or legatees in an ineffective gift of principal, nor will an ineffective gift of income pass to a succeeding income beneficiary nor to a remainderman: Maris Estate, 12 D. & C. 783; reversed on other grounds, 301 Pa. 20. See also Wenner's Estate (1932), 17 D. & C. 784.

In Umble's Estate, 323 Pa. 170, testator gave income perpetually to five named charities. A next of kin attacked the gift to two of the institutions, but the Supreme Court held that she had no interest because even if the gifts were void, they would pass to the other three organizations as residuary legatees under the will.

In Lockhart's Estate, 51 D. & C. 337, which is very much akin to the instant case, Judge Bolger of the Orphans' Court of Philadelphia, in a well-reasoned opinion, decided that where there was a void gift contained in the residuary clause of the will dealing with income, that the other residuary legatee of the income was entitled to take under the terms of section 15 (c) of the Wills Act of 1917. Judge Bolger reasoned that by analogy to Morgan's Estate, supra, where a void share in the residuary clauses as to corpus was awarded to the other residuary legatee entitled to corpus, the same rule should apply with respect to a void share of income contained in the residuary clause of the will. He there made this pertinent observation, page 346:

"If it be true that an income beneficiary may not share in distribution of a void gift of principal, then conversely it must be equally true that a principal beneficiary may not be permitted to share in distribution of a void share of income."

178

This, we think, is sound reasoning, and well supported by the decisions in McNulty's Estate, supra, Morgan's Estate, supra, Maris' Estate, supra, and Umble's Estate, supra.

While the Philadelphia Orphans' Court en banc did not sustain Judge Bolger in his decision on the income, it was because, as they stated, the Supreme Court following Feeney's Estate, 293 Pa. 273, had decided in 306 Pa. 394, that the income was payable to testator's next of kin. Since the decision in Feeney's Estate, supra, there has followed Morgan's Estate, supra, Maris' Estate, supra, and Umble's Estate, supra, and they seem contrary to the decision reached in Feeney's Estate. It should be added that the Philadelphia Orphans' Court apparently so regarded it, for they stated in Lockhart's Estate, supra, page 349:

"While we are disposed to agree with the holding of the auditing judge upon this question, we are without authority to depart from the decision of the Supreme Court."

Accordingly, we now rule that as to the two fifths of the net income payable to Jeanne M. York, the same shall be paid to the other current residuary legatees, the effect of which will be to increase the share of the net income of Barbara Ann York Covert from one fourth to five twelfths, of Sandra Ann York from one fourth to five twelfths, and the one tenth net income to charities to two twelfths.

Now, October 4, 1950, the account is confirmed and the accountants will prepare a new schedule of distribution in accordance with this opinion. After the court's approval of same, this decree will become absolute unless exceptions are filed within 10 days therefrom.