## Darlington Estate

*Robert N. Beatty*, of *Butler, Beatty, Greer & Johnson*, and *William White, Jr.*, of *Duane, Morris & Heckscher*, for accountants.

VAN RODEN, P. J., September 1, 1960.—The matter presently before the court arises by the filing of a petition by the executors of the will of the present decedent asking the court to reopen the adjudication of the account of the executors and to amend said adjudication.

The facts are not disputed, and a recital of the pertinent facts as contained in the oral statement made in open court by counsel for the executors is as follows:

The first and final account of the executors of the will of Isaac G. Darlington, deceased, was audited in the Orphans' Court of Delaware County and confirmed by adjudication dated October 24, 1957. Thereafter, in accordance with the requirement of the adjudication, a schedule of distribution was filed and approved by the court on August 10, 1959.

In addition to certain pecuniary and specific bequests, all of which have been paid in full, testator devised and bequeathed his residuary estate as follows: 1/10 to each of five cousins; 11/25 to Swarthfore College; 1/50 to American Friends Service Committee; 1/50 to Salvation Army; 1/125 to West Chester Friends Meeting; 1/125 to Taylor Hospital; 1/250 to Delta Upsilon Fraternity.

The will directs in article ninth that all inheritance, estate and other death taxes shall be paid out of the principal of the residuary estate in the following language:

*"NINTH:* I direct that any and all inheritance, estate, succession, transfer and other death taxes that may be assessed in consequence of my death, of whatever nature and by whatever jurisdiction imposed, and regardless of the nature and ownership of the property at the time of my death on which the same may be assessed or imposed or to which the same may be attributed, shall be paid out of the principal of my re-

siduary estate; and my executors and trustees shall have the absolute power in their discretion to pay the same at once, whether or not the law under which the same are imposed permits the postponement of payment of all or part of them to a later time."

The Pennsylvania transfer inheritance tax on all bequests and devises, including the residuary gifts to charities, was paid in full at the 15 percent rate in two installments in the amount of $185,250 on December 26, 1956, and in the amount of $13,269.18 on October 4, 1957.

The Federal estate tax, as calculated by the executors, was paid January 10, 1958, as appears in the schedule of distribution, in the sum of $320,597.60. A second payment, representing an additional amount claimed by the Federal government, but denied by the executors, was made June 19, 1959, in the sum of $12,-635.38, which was also reflected in the schedule of distribution.

All of these tax payments were charged against the principal of the residuary estate under the direction of article ninth of the will. In addition, interest on the principal amount of the last payment of Federal estate tax was paid and charged against income of the residuary estate in the amount of $1,092.70. A claim for refund of the payments of $12,635.38 and $1,092.70 of Federal estate tax is now pending in the Tax Court of the United States.

It should be noted that the executors' account was filed at an unusually early date. This was done in order to accommodate certain of the beneficiaries and in order to make it possible to pay certain of the legacies without waiting until after the time in which the Federal estate tax return would have to be completed and filed. Accordingly, it was not until after the adjudication of the court that the executors filed the Federal estate tax return and made payment to the

Federal government. Moreover, the controversy over the amount of estate tax owing to the Federal government did not arise until the subsequent audit of the Federal estate tax return by representatives of the Internal Revenue Service. Hence, the matter for which the court is now being asked to reopen the adjudication was not known to the executors at the time their account was audited by this court.

In computing the amount of Federal estate tax, the executors took advantage of an election given under section 2053 (d) of the Internal Revenue Code, 26 U. S. C. A. §2053 (d). This section, which was added by an amendment to the Internal Revenue Code in 1956, provides in part that the executors may elect to deduct from the value of the gross estate the amount of any inheritance tax imposed by a State or territory upon a transfer by decedent for public, charitable or religious uses: Internal Revenue Code, sec. 2053 (d) (1). The code goes on to provide, however, that "no deduction shall be allowed under paragraph (1) for a State death tax . . . unless the decrease in the (estate) tax . . . which results from the deduction provided in paragraph (1) will inure solely for the benefit of the public, charitable, or religious transferees. . . .": Internal Revenue Code, sec. 2053 (d) (2).

In accordance with the election thus given them, the executors included in schedule "J" of the estate tax return a deduction entitled "Pennsylvania Inheritance Tax Paid on Amount Passing to Charities" in the amount of $62,828.72. Had the executors not taken the Pennsylvania inheritance tax as a deduction in this manner, they would nevertheless have used it in computing the credit against the Federal estate tax, which is allowed in all cases for inheritance taxes. However, in this estate, the total amount of Pennsylvania transfer inheritance taxes exceeded the credit allowed against the Federal estate tax.

The advantage in following the method selected by the executors is that the total estate tax liability calculated in this fashion came to $320,445.51; whereas, had the executors employed the other method available to them, the total Federal estate tax liability would have been $333,232.98. Thus, the amount of Federal estate tax saved by the method employed by the executors amounts to $12,787.47.

Upon the audit of the Federal estate tax return, the representative of the Commissioner of Internal Revenue refused to approve the action of the executors in taking the inheritance tax on the charitable legacies as a deduction and assessed a deficiency against the estate of $12,635.38. This figure varies slightly from the one given above because of certain other adjustments made by the agent and agreed to by the executors in computing tax liability upon audit by the Internal Revenue Service.

As the result of the position taken by the Federal government with respect to the assessment of additional tax, the executors filed a petition for redetermination of estate tax deficiency with the Tax Court of the United States under date of May 29, 1959. Subsequently, on June 19, 1959, the executors paid the sum of $13,728.08 to the District Director of Internal Revenue at Philadelphia, representing the deficiency claimed by the government in the amount of $12,-635.38, together with interest thereon in the sum of $1,092.70, and amended their petition for a redetermination of the deficiency to a petition for refund of overpayment of estate taxes.

This matter is now before the Tax Court of the United States but has not yet come to trial, as a continuance has been requested until this court could consider the petition for reopening of the adjudication.

The basis of the government's refusal to approve the deduction of Pennsylvania inheritance taxes as an ex-

pense of the estate is that the deduction is not allow-
able because the resulting tax benefit does not inure
solely to the benefit of charity. This position of the
government is based upon the fact that only those
fractional shares of the residue which are bequeathed
to Swarthmore College, American Friends Service
Committee, Salvation Army, West Chester Friends
Meeting and Taylor Hospital are bequests to charity.
The remaining legacies, namely those to the five in-
dividuals and the Delta Upsilon Fraternity, are non-
charitable, and it is the position of the government
that it cannot be established either from the will or
from the adjudication of this court that these five in-
dividuals and the fraternity will not share to the ex-
tent of their proportionate shares of the residue in the
tax savings of more than $12,000. For this reason,
the government is contesting the claim for refund.

Unless the tax savings inure solely to the benefit of
the charitable beneficiaries, the savings will not be
permitted, and the amount of tax which has now been
paid will in fact represent the final liability of the
estate.

It is the contention of the executors that both the
facts and the law indicate that this court should di-
rect that the tax savings inure solely to the benefit of
the charitable residuary beneficiaries.

As a result of careful consideration of the very
comprehensive statement of the facts presented to the
court, not overlooking the extensive and far-reaching
importance which may be the result of our decision,
and with the hope that the law may be clarified, it is
believed that a full discussion should be included in
this opinion in order to indicate the reasons for our
findings and conclusions.

The Federal estate tax, based as it is on the value
of property owned by an individual at his death, or

given away by him in contemplation of death, rather than being based on what each of his heirs receives, makes it unavoidable that problems will arise as to the allocation of the tax burden among the recipients.

In solving these problems, both our statutes and our court decisions have made it clear that the ultimate goal in each case must be to do equity.

Thus, the first statute passed by the Pennsylvania Legislature (the Proration Act of July 2, 1937, P. L. 2762) directed that the Federal estate taxes shall be "equitably prorated". Further, in the leading case on this subject, Mellon Estate, 347 Pa. 520 (1943), the court says:

"In an equitable proceeding of this sort, the court is concerned with substance rather than form": 347 Pa. 530.

The problem in the present case is relatively simple. In 1956, the Internal Revenue Code was amended by the addition, inter alia, of section 2053($d$), 26 U. S. C. A. §2053($d$), which permits the executors of a will to deduct the local State inheritance taxes on charitable legacies from the gross estate in computing the Federal tax. This option, however, can only be exercised if the tax savings thus obtained will inure solely to the benefit of the charities concerned: Section 2053($d$) (2).

Certain charities are among the residuary beneficiaries of Mr. Darlington's will. Their legacies, along with those of the other beneficiaries, were taxed by Pennsylvania at the 15 per cent rate applicable to this estate. By deducting the inheritance tax on the charitable legacies, the executors can save some $12,000 in Federal estate tax if, but only if, the entire saving will inure to the benefit of those charities.

Under these circumstances, the tax having been paid and a refund claimed, should this court direct

that the tax savings on the charitable legacies shall inure solely to the benefit of the charities so that the refund can be obtained and paid to the charitable legatees?

Mr. Darlington's executors have been careful to observe all existing rules in allocating the burden of death taxes among the beneficiaries. Since the will directs that all death taxes shall be paid from the principal of the residuary estate, the charities are contributing their pro rata share of death taxes on the pecuniary and specific bequests to other legatees under the rule first established in North's Estate, 50 D. & C. 703 (O. C., Philadelphia Co., 1944).

Also, since neither the residuary clause nor the tax clause exonerates the charitable residuary legatees from sharing the tax burdens, the executors have followed the holding of Audenried Estate, 376 Pa. 31 (1954), by computing the fractional residuary shares of the charities after first deducting from the principal of the residue the taxes on the other residuary bequests.

There remains the sole question as to whether the benefit which is offered under section 2053 (d) of the Internal Revenue Code should be allocated solely to the charitable legatees.

In order to answer the question before the court, it is essential to understand the situation which gave rise to the inclusion of this particular provision in the code and the subsequent changes to the Estate Tax Apportionment Act of August 24, 1951, P. L. 1405, 20 PS §§881-887.

An excellent article on this subject appears in the June 1956 issue of the Fiduciary Review, and much of the discussion which follows has been drawn from it.

Prior to February 20, 1956, there was no provision in the Internal Revenue Code under which the State inheritance taxes on a charitable legacy could be taken as a deduction in calculating the taxable Federal estate, with the result that even where an estate was given entirely to charities which would be exempt under the Internal Revenue Code, there would be a Federal estate tax not only on the amount necessary to produce the funds for the local State inheritance tax on such legacies, but also on the funds needed for the resulting Federal estate tax as well.

Thus, if a Pennsylvania estate of $60,000,000 were left entirely to charity, the Pennsylvania tax of 15 per cent would have been $9,000,000, and by reason thereof there would have been payable a Federal estate tax of more than $10,000,000. The reason for the high Federal tax, obviously, is that the charitable deduction is reduced by the $9,000,000 State tax which calls for a Federal tax on $9,000,000. Obviously, there is no deduction against Federal estate tax on the funds needed to pay the Federal estate tax, so that more funds, also taxable, must be included in a ridiculous pyramiding of Federal tax on a sum far greater than the fund needed for the State inheritance tax which was originally the only asset that was not exempt.

In the original version of the Pennsylvania 1951 Estate Tax Apportionment Act, this outrageous situation was partly avoided by the provisions of section 4(b)(4) which provided that no apportionment should be made against property passing to a charity to the extent that such gift to charity did not constitute an allowable deduction against the Federal estate tax solely by reason of an inheritance or other death tax imposed upon it.

While this provision apparently could not cure the situation in the hypothetical example of an estate of $60,000,000 left solely to charity, it did help in other

cases. For example, if the will left $30,000,000 to charity and a like amount to noncharity and contained no tax directions, the Federal tax would be computed only on the $30,000,000 taxable gift and the $4,500,000 tax on charity. Thus, in any case where noncharitable gifts were at least equal to the Pennsylvania inheritance tax on charitable gifts, the pyramiding of the Federal estate tax was avoided.

Obviously, even in such cases, there was nothing that the States could do by their own statutes to avoid the remaining unfair feature of the Internal Revenue Code, namely the imposition of Federal estate tax on the amount of State inheritance tax paid on charitable gifts. Finally, however, this unfair tax on tax was cured by the amendment of 1956. This, as already stated, permits the executors to take the local inheritance tax on charitable gifts as a deduction. Thus, in the absence of overriding provisions in the will or a State statute, the tax on tax was eliminated.

Under this amendment to the Internal Revenue Code, in the hypothetical $60,000,000 estate left entirely to charity the $9,000,000 Pennsylvania inheritance tax would be deductible as well as the remaining $51,000,000 going to the charity.

This change in the Internal Revenue Code focused attention on section 4(b)(4) of the Estate Tax Apportionment Act for that provision allocated the tax portion of a charitable legacy against the noncharitable legatees. In other words, in the hypothetical case of $30,000,000 left to charity and a like amount to noncharity, since the Federal estate tax on the $4,500,000 Pennsylvania inheritance tax on the charitable legacies would be allocable against the noncharitable share, no deduction could be obtained in computing the Federal estate tax. This was so because the amendment to the Federal act specifically states

that the deduction can be taken only if the resulting tax saving will inure solely to the benefit of charity.

Accordingly, the provision in section 4(b) (4) of the Pennsylvania statute was eliminated by the act which became effective May 10, 1956, P. L. (1955) 1559. As was the case in the amendment to the Internal Revenue Code, so also the Pennsylvania amendment was made retroactive to cover estates of all persons dying after December 31, 1953.

The repeal of section 4(b) (4) of the Pennsylvania statute has completed the elimination of the tax on tax in all cases where the will contains no contrary directions relating to tax apportionment. Thus, in the illustrative case of the $60,000,000 estate going half to charity, any estate tax on the $4,500,000 Pennsylvania inheritance tax on the charitable gift of $30,000,000 is allocated against that gift. Accordingly, the amount of the inheritance tax on the charitable gift is deductible in computing Federal estate tax since the benefit of the deduction inures solely to the charity.

The effect of these changes to the Internal Revenue Code and the Estate Tax Apportionment Act of 1951, was considered in Etting's Estate, 6 Fiduc. Rep. 518 (O.C. Montgomery Co., 1956). In that case, President Judge Taxis in an adjudication dated January 31, 1956, had directed the accountant to apportion the Federal estate tax under section 4(b) (4) of the Estate Tax Apportionment Act of 1951. Exceptions to this direction were filed as a result of the Federal amendment, and the case was continued pending action by the legislature. As the result of the passage of the amendment to the 1951 Act, Judge Taxis sustained the exceptions and directed that the charities were no longer relieved from apportionment of any Federal estate tax to which they would be subject to

the extent of the Pennsylvania inheritance tax thereon. In this way, by charging the charities with that portion of the Federal estate tax assessed on the funds used to pay the inheritance taxes on the charitable gifts, the estate could demonstrate that the charities alone would benefit from the deduction allowed in the amendment to the Federal act. The opinion of Judge Taxis confirms the obvious conclusion that the legislative purpose behind the 1956 amendment to the Estate Tax Apportionment Act was to permit the charitable beneficiaries of Pennsylvania decedents to receive the maximum possible reduction in Federal estate tax payable by them because their legacies were subject to Pennsylvania inheritance tax.

Etting's Estate should therefore be followed in the present case unless the Darlington will contains a contrary direction.

We thus turn to the provisions of the tax clause in the Darlington will, since the Act of 1951 specifically provides that any direction of a testator or settlor as to apportionment of Federal estate tax "shall take precedence over the provisions of this Act . . .": 20 PS §883.

Article ninth of the Darlington will directs that all death taxes shall be paid out of the principal of the residuary estate, a direction which, as has already been stated, the executors have carefully followed. Neither in that clause nor anywhere else in the will is there any direction as to which legatees should benefit from an allowable Federal estate tax deduction.

Under these circumstances, it is obvious that the court here should enter a decree which will effect the same result as was reached in Etting's Estate.

A comparable situation can be found in Clark Estate, 8 D. & C. 2d 665 (O.C. Allegheny Co., 1956).

In that case, the widow elected to take against the will. Under Federal law, there was no Federal estate tax upon her share of the estate, since it qualified for the marital deduction. However, the widow's share was of course subject to Pennsylvania transfer inheritance tax. It was pointed out that the transfer inheritance tax payable on the widow's share, as well as the inheritance tax payable on other shares of the estate, all qualified for the 80 per cent credit allowable against the basic Federal estate tax. Section 4(b)-(3) of the Estate Tax Apportionment Act of 1951 provides that the credit for inheritance taxes shall "inure to the benefit of the persons or interests chargeable with the payment of such taxes to the extent or in proportion that the tax paid or payable reduces the estate tax." However, since Mrs. Clark's shares of the estate were not subject to estate tax, no estate tax would be prorated against her under any apportionment statute. Under these circumstances, the court held that Mrs. Clark was "entitled to a credit for the Pennsylvania inheritance tax payable by her to the extent that such tax payable by her reduces the federal estate tax and that this credit should be applied to reduce the amount of the Pennsylvania inheritance tax payable by Mrs. Clark in this estate."

While the situation arising in Clark Estate is not specifically covered by the statute, the court has applied equitable principles in reaching a fair result. Clearly, since the inheritance tax paid by Mrs. Clark gave rise to a portion of the credit against the basic Federal estate tax, equity demanded that the benefit of that credit should be allocated to her. Therefore, since Mrs. Clark's own share of the estate was not subject to Federal estate tax, the benefit was applied in reduction of the amount of Pennsylvania inheritance tax payable by her.

The decision in Clark Estate is of importance to the Darlington Estate because it illustrates the manner in which equitable principles must be applied in cases which are not expressly covered by the 1951 Estate Tax Apportionment Act. In allocating a benefit the court sought out the source of the benefit.

In the present case the source of the benefit is the charitable legacies, for they alone give rise to the deduction permitted in section 2053 (d) of the Internal Revenue Code. Accordingly, by analogy to Clark Estate, as well as in conformity with Etting's Estate, and based on the equitable principles which govern death tax apportionments, the benefits derived under section 2053 (d) of the Internal Revenue Code should be awarded to the charitable legatees of the residuary estate.

Accordingly, the adjudication of this court dated October 24, 1957, will be reopened and the said adjudication will be amended to provide that all savings which may be derived through the election of the executors to treat Pennsylvania inheritance taxes on charitable gifts as a deduction in computing the taxable estate for Federal estate tax purposes rather than as a credit against Federal estate tax shall inure solely for the benefit of such of the parties interested in the residue of the estate as are recognized as charities under the Internal Revenue Code and supporting regulations; and any decrease in the Federal estate tax arising by reason of the executors' election to claim the inheritance tax payable on the charitable legacies as a deduction shall inure solely to the benefit of the charities in the proportions that the inheritance tax paid on each bequest bears to the total inheritance taxes paid on charitable bequests.

As so amended as herein provided, said adjudication of October 24, 1957, be and the same is hereby ratified and confirmed absolutely.