**Lieberman v. Howard Johnson's, Inc. (No. 2)**

*Steven M. Feldman,* for plaintiff.

*Gerry J. Elman,* Deputy Attorney General, for Commonwealth.

*Richard E. McDevitt,* for defendant Howard Johnson's, Inc.

*Edward I. Swichar,* for defendant Atlantic Richfield Co.

*Benjamin M. Quigg, Jr.,* for defendant Humble Oil & Refining Co.

*Hoyt H. Harmon and Arthur L. Vangeli,* for defendant Gulf Oil Corp.

ANDERSON, J., June 29, 1973.—On January 23, 1973, the Commonwealth of Pennsylvania filed a petition to intervene in the above-captioned case. That action was brought by Charles Lieberman on his own behalf and as a class action on behalf of all other users of the Pennsylvania Turnpike who have purchased or will in the future purchase gasoline, motor fuel, motor oils and food from the named defendants, Howard Johnson, Inc., Atlantic-Richfield Co., Humble Oil & Refining Co., and Gulf Oil Corp.

The complaint alleges that pursuant to lease agreements with the Pennsylvania Turnpike Commission, the oil company defendants were granted the exclusive right to operate gas stations and restaurant facilities along the Turnpike. The lease contracts allegedly provide, inter alia, that the prices at which gasoline, motor fuel, motor oils and food sold from the various demised premises should not be in excess of the retail prices charged in the vicinity.

Subleases between the oil companies and Howard Johnson allegedly contain similar pricing provisions. Plaintiff alleges that the named defendants have breached their respective contracts by charging prices in excess of those prevailing in the vicinity of their turnpike establishments. Plaintiff further contends that he and the class he represents are third-party beneficiaries of the contracts, and, as such, are entitled to damages and injunctive relief.

The Commonwealth's petition to intervene is founded on two distinct theories:

1. The Commonwealth, by its Attorney General, has the duty to protect the general welfare of its citizens in its capacity as parens patriae, trustee, guardian and representative of the citizens, and, therefore, has a substantial interest in the outcome of the litigation.

2. The Commonwealth in its proprietary capacity has a direct pecuniary interest in the outcome of the litigation because purchases by officials, employes and agents of the Commonwealth were made from defendants at prices which were in violation of the lease and sublease provisions. Therefore, the Commonwealth is a member of the class defined in the Lieberman complaint, and thus has a right to intervene.

## INTERVENTION BASED ON PARENS PATRIAE DOCTRINE

The concept of parens patriae is derived from the royal prerogative of the English monarch as father of the country, and as guardian of persons under legal disabilities to act for themselves. This concept has been greatly expanded in the United States and has come to mean the right of a State to sue to "prevent or repair harm to its 'quasi-sovereign,' interests": Hawaii v. Standard Oil, 405 U. S. 251, 258, 31 L. Ed. 2d 184, 190 (1972). An examination of the leading cases indicates that this means that while a State can sue to maintain the economic well-being of the State itself or to protect the health, safety and welfare of the public at large, it cannot sue to protect the interests of specific individuals. Thus, in Missouri v. Illinois, 180 U. S. 208, 45 L. Ed. 497 (1901), it was held that Missouri could sue as parens patriae to enjoin the Sanitary District of Chicago from discharging sewage into the Plaines River. In Kansas v. Colorado, 185 U. S. 125, 46 L. Ed. 838 (1902), it was held that Kansas could bring suit as parens patriae to enjoin Colorado and Colorado citizens from diverting waters from the Arkansas River. Georgia v. Tennessee Copper Co., 206 U. S. 230, 51 L. Ed. 1038 (1907), permitted Georgia to seek an injunction against a Tennessee factory

which was discharging noxious fumes into the atmosphere. See also Pennsylvania R. R. v. Sagamore Coal Co., 281 Pa. 233 (1924), cert. den. 267 U. S. 592, 69 L. Ed. 803 (1925); Commonwealth ex rel. v. Philadelphia & Reading Coal & Iron Co., 50 D. & C. 411 (Phila. Co., 1944); Mountain Water Supply Co. v. Melcroft Coal Co., 1 D. & C. 660 (C. P. Fay. Co., 1922), all of which involved the right of the Commonwealth of Pennsylvania to intervene because of its interest in enjoining pollution. But see Oklahoma v. Atchison, Topeka & Santa Fe Railway Co., 220 U. S. 277, 55 L. Ed. 465 (1911), where it was held that Oklahoma had no standing to enjoin for the benefit of particular shippers the exaction of allegedly illegal rates by a Kansas railroad corporation.

In California v. Frito-Lay, Inc., 474 F. 2d 774 (9th Cir., 1973), cert. den. 412 U. S. 908 (1973), the State of California sued to recover treble damages under section 4 of the Clayton Act, 15 U. S. C. §15, 38 Stat. 731. It was alleged that 12 manufacturers of snack foods had conspired to fix prices in violation of the Sherman Act, 15 U.S.C. §1, 26 Stat. 209, as amended. The court held that the State of California had no standing to sue as parens patriae on behalf of its citizen-consumers for injuries suffered by them, and that such an action in circumventing the notice provisions of F. R. C. P. 23, would conflict with constitutional due process requirements.

In the Commonwealth's petition to intervene and in its proposed complaint, it alleges no facts to support a finding that the alleged overcharges on the turnpike are endangering the economic well being of the State itself, or that the welfare of the public-at-large is in jeopardy. On the contrary, all that is alleged is that individual users of the turnpike who purchase goods and services from defendants are overcharged.

Therefore, since the State has no "quasi-sovereign" interest in the matter, intervention as parens patriae cannot be sustained.

It should be noted, however, that none of the decisions cited above in any way limit the right of a State to sue as a class representative pursuant to F. R. C. P. 23, to protect the interests of its citizens. See especially Hawaii v. Standard Oil, 405 U.S. at 266, 31 L. Ed. 2d at 194-95 (1972). See also Illinois v. Bristol-Myers Co., 470 F. 2d 1276 (D. C. Cir., 1972; In re Ampicillin Antitrust Litigation, 55 F. R. D. 269 (D. C., 1972). In both these cases, the courts held that State attorneys general were to be favored as class representatives. However, in the instant case, the Commonwealth's Attorney General is precluded from acting in that capacity because the class is already represented by plaintiff Lieberman.

## INTERVENTION BASED ON COMMONWEALTH'S PROPRIETARY INTEREST

Generally, intervention is governed by Pennsylvania Rules of Civil Procedure 2326 to 2330. Rule 2327 specifies, inter alia, that subject to the rules, any person can intervene in an action if "the determination of such action may affect any legally enforceable interest of such person whether or not he may be bound by a judgment in the action." However, it was held in Bannard v. New York State Natural Gas Corp., 404 Pa. 269, 280 (1961), that the right of the Commonwealth to intervene in a case is not governed by Rule 2327, but rather is based on the Act of May 28, 1915, P. L. 616, sec. 1, as amended, 12 PS §145, which provides:

"in all cases at law or in equity . . . in which the Commonwealth or any officer thereof may be a party, or in which the Commonwealth may have any interest, the Commonwealth shall have a right to intervene, and to appear, plead, prosecute, defend, or appeal,

as other parties litigant; but in no case shall be required to give any bond or other security for costs or for any other purpose whatever."

Defendants contend that section 145 merely affords the Commonwealth the right to intervene as other party litigants, and places it in no superior position. If such were the case, intervention of the Commonwealth would be precluded by Pa. R. C. P. 2329(2) which provides:

"[A]n application for intervention may be refused, if . . . (2) the interest of the petitioner is already adequately represented."[*]

Although the language of Rule 2329(2) is permissive, it has been interpreted to mean that intervention should be permitted only to the extent that the rights of a person are not adequately protected by the named plaintiff. If no conflict of interests exists, then intervention should be disallowed. See Highway Truck Drivers & Helpers v. Cohen, 409 Pa. 546, 549 (1963).

However, the note to section 145 indicates that the section is not suspended or affected by the Rules of Civil Procedure relating to intervention; but to the extent that section 145 does not regulate procedure, Rules 2328, 2329 and 2330 apply. See Bannard v. New York State Natural Gas Corp., supra, where it was held that the Commonwealth was bound by Rule 2329(1) which requires that the intervenor's claim or defense be in subordination to, and in recognition of, the propriety of the action.

Unlike Rule 2329(1), which enunciates settled principles, Rule 2329(2) is not procedural, and, therefore, does not limit the Commonwealth's right to intervene under section 145.

---

[*]This court has held this day that plaintiff, Charles Lieberman can adequately represent the class.

Although the Commonwealth has wide latitude to intervene, see Commonwealth ex rel. v. Philadelphia & Reading Coal & Iron Co., 50 D. & C. 411 (Phila. Co., 1944); "[i]ntervention under the act of 1915 is not a matter of right": York v. Public Utility Commission, 3 Pa. Commonwealth Ct. 270, 282 (1971), affirmed 449 Pa. 136 (1972).

In order to intervene in any action, the Commonwealth must have a real interest in the litigation, not an interest which is remote, incidental or indirect: Mellon Estate, 347 Pa. 520 (1943). In the instant case, because the Commonwealth and its servants have purchased goods and services from defendants and have thereby allegedly suffered monetary damages, the Commonwealth has a real interest in the outcome of this litigation.

York v. Public Utility Commission, supra, dealt with another issue that has been advanced by defendants in this case: the right of the Attorney General to intervene in an action in which a State agency is an adverse party. Although the Pennsylvania Turnpike Commission is not now a party, adverse or otherwise, in this litigation, so that any conflict is a matter of supposition only, nevertheless, the issue is important enough to require discussion at this time.

In York, the City of York, Pa., sought to have reversed an order of the Public Utility Commission approving a merger of three telephone companies. The Attorney General petitioned to intervene on behalf of the Commonwealth of Pennsylvania as an appellant in the appeal. Commonwealth Court denied intervention, holding that such an action would produce an irreconcilable conflict of interest because the Attorney General is charged by law with representing the Public Utility Commission. See also Ault Unemployment Compensation Case, 188 Pa. Superior Ct.

260, 262-64, no. 1 (1958) wherein the Superior Court in dictum discussed the impropriety of the Attorney General appearing personally and arguing *against* the Unemployment Compensation Board of Review, which he is charged with representing.

The conclusions in these two cases are based on sections of The Administrative Code of 1929, Act of April 9, 1929, P. L. 177, as amended, 71 PS §51, et seq., which require the Department of Justice to represent all commissions of the State Government.

Section 902 of the code gives the Department of Justice the power and *duty* to furnish legal advice to the Governor, and to all administrative departments, boards, commissions and officers of the State Government:

"Legal advice.

"The Department of Justice shall have the power, and its duty shall be:

"(a) To furnish legal advice to the Governor, and to all administrative departments, other than the Department of the Auditor General, boards, commissions, and officers of the State Government, concerning any matter or thing arising in connection with the exercise of the official powers or the performance of the official duties of the Governor, or such administrative departments, boards, commissions, or officers;

"(b) To supervise, direct and control all of the legal business of every administrative department, other than the Department of the Auditor General, board, and commission of the State Government": 71 PS §292.

Section 903 of the code gives the Department of Justice the power and duty to conduct appropriate litigation:

"Litigation.

"The Department of Justice shall have the power, and its duty shall be:

"(a) To collect, by suit or otherwise, all debts, taxes, and accounts, due the Commonwealth, which shall be placed with the department for collection by any department, board, or commission. The department shall keep a proper docket or dockets, duly indexed, in which it shall make and preserve memoranda of all such claims, showing whether they are in litigation and their nature and condition;

"(b) To represent the Commonwealth, or any department, other than the Department of the Auditor General, board, commission, or officer thereof, in any litigation to which the Commonwealth or such department, board, commission, or officer, may be a party, or in which the Commonwealth or such department, board, commission, or officer, is permitted or required by law to intervene or interplead": 71 PS §293.

Section 512 of the code requires the various departments, boards, commissions and officers of the State to refer legal matters to the Department of Justice and further mandates that the advice given by the Department of Justice be followed:

"Legal advice and services.

"Whenever any department, other than the Department of the Auditor General, board, commission, or officer of the State Government, shall require legal advice concerning its conduct or operation, or when any legal difficulty or dispute arises, or litigation is commenced or to be commenced in which any department, other than the Department of the Auditor General, board, commission, or officer, is concerned, or whenever any taxes or other accounts of any kind whatever due the Commonwealth remain overdue and unpaid for a period of ninety days, it shall be the duty

of such department, board, commission, or officer, to refer the same to the Department of Justice.

"It shall be the duty of any department, other than the Department of the Auditor General, board, commission, or officer, having requested and received legal advice from the Department of Justice regarding the official duty of such department, board, commission, or officer, to follow the same, and, when any officer shall follow the advice given him by the Department of Justice, he shall not be in any way liable for so doing, upon his official bond or otherwise.

". . .

"It shall be unlawful for any department, other than the Department of the Auditor General, board, commission, or officer, of the Commonwealth, to engage any attorney to represent such department, board, commission, or officer, in any matter or thing relating to the public business of such department, board, commission, or officer, without the approval in writing of the Attorney General": 71 PS §192.

If the Pennsylvania Turnpike Commission is a "commission of the State Government" under The Administrative Code, the duties and obligations of the Attorney General in relation thereto would be governed by sections 512, 902 and 903, and the Attorney General would be precluded from intervening because of a conflict of interest. However, the Turnpike Commission occupies a unique position in Pennsylvania, quite unlike the positions of either the Pennsylvania Public Commission or the Unemployment Compensation Board.

The Pennsylvania Turnpike Commission was created by the Act of May 21, 1937, P. L. 774 (No. 211), 36 PS §652a, et seq. and has characteristics of both an independent quasi-corporate body and a state agency. Thus, the commission has the power to sue

and be sued, plead and be impleaded, contract and be contracted with, and have an official seal; it can make all necessary rules and regulations for its own government; it has the power to acquire, and dispose of personal and real property; it has the power to hire employes and fix their compensation; it can issue turnpike revenue bonds (although the details of so doing are greatly circumscribed by the act itself). On the other hand, section 4 of the act specifically states that the "commission is hereby constituted an instrumentality of the Commonwealth, and the exercise by the commission of the powers conferred by this act in the construction, operation and maintenance of the turnpike shall be deemed to be an essential governmental function: 36 PS §652d. In Commonwealth v. Merritt-Chapman & Scott Corp., 432 Pa. 584 (1968), the Supreme Court held that for purposes of the Public Utility Code, the Turnpike Commission is neither a person nor a corporation, and furthermore that "it has been the position of the Legislature and the view of this Court that the Turnpike Commission is to be regarded essentially as an *agency of the Commonwealth*": Id. at 587. (Emphasis supplied). See also Rader v. Pennsylvania Turnpike Commission, 407 Pa. 609 (1962), holding that the Turnpike Commission, as an instrumentality of the Commonwealth, is immune from liability in trespass for damages resulting from the negligence of its agents and employes.

The fact that the Turnpike Commission has been termed an "agency of the State" does not, in and of itself, mean it is a "commission of the State" under The Administrative Code. Several factors indicate that just the opposite is true.

The Administrative Code lists in great detail State government departments, boards, commissions and

advisory boards and commissions. For instance, the Public Utility Commission is listed in section 201, 71 PS §61, as an independent administrative commission, and the Unemployment Compensation Board of Review appears in section 202, 71 PS §62, as an administrative agency in the Department of Labor and Industry. The Pennsylvania Turnpike Commission appears nowhere in the code. Most significantly, it is not one of the five agencies listed as independent boards and commissions.

Of even more significance are the sections of the Turnpike Act relating to legal representation. Section 4 specifically grants to the commission the power and authority to employ attorneys. Section 6 contains the only apparent limitation on the right of the commission to conduct its own legal affairs: the commission must act through the Department of Justice in order to acquire land by condemnation.

While it is true that the Attorney General has represented the Turnpike Commission in a few cases other than those dealing with condemnation (see, i.e., Pennsylvania Turnpike Commission v. Smith, 350 Pa. 355 (1944)), the most recent cases known to this court are McSorley v. Pennsylvania Turnpike Commission, and Torrence v. Pennsylvania Turnpike Commission, 390 Pa. 81, decided in 1957.

Apparently, since that date, the commission has employed house counsel and has engaged private counsel to represent its interest. Any assistance given by the Department of Justice in the older cases was on a purely voluntary basis not mandated by The Administrative Code.

Therefore, no conflict of interest exists which would preclude the Attorney General from intervening in the instant proceedings.

Defendants have several other objections to intervention by the Commonwealth. They object to intervention at this time because the class action status of the litigation has not been determined. Pa. R. C. P. 2327, though not applicable, is instructive. It permits intervention "[a]t any time during the pendency of an action." "'[P]endency of an action' means the status of an action after it has begun and before the final disposition of it": Universal Builders Supply v. Brown, 109 Pitts. L.J. 435, 436 (1961). See also Robinson Township School District v. Houghton, 387 Pa. 236, 241 (1956). Intervention has been permitted before a decision on preliminary objections has been rendered (see City of Philadelphia v. Dougherty, 75 Dauph. 272 (1960)), and there appears to be no reason why preliminary objections in the nature of a motion to dismiss the class action should be treated differently.

Defendants further contend that the Commonwealth's petition to intervene should be dismissed because it is not timely. The matter of timeliness of intervention is within the periphery of the court's discretionary domain: Templeton Appeal, 399 Pa. 10 (1960). While it is true that the Commonwealth must intervene in due season, just as other litigants are required to do (Commonwealth's Appeal (White Township School District)), 305 Pa. 263 (1931), intervention during a period in any litigation when preliminary objections are still being argued is certainly timely. Moreover, the court expects that the participation of the Commonwealth in the action will serve to expedite rather than delay it.

For the reasons stated above, the court will permit the intervention of the Commonwealth of Pennsylvania in the instant litigation.

In an adjudication filed this day, the court has

192

directed the original plaintiff to file memoranda of fact and law, with reference to legal authority and factual documentation.

In view of the fact that the court is permitting the Commonwealth to intervene as a party-plaintiff, the Commonwealth is directed to file on its own behalf, or in cooperation with the original plaintiff, a memorandum as set forth in the adjudication filed in the original proceedings.

## ORDER

*And now,* June 29, 1973, it is hereby ordered that the petition of the Commonwealth of Pennsylvania to intervene as a party-plaintiff in the above-captioned proceeding is granted, and the Commonwealth is granted leave to file and serve upon defendants a complaint in equity.

It is further ordered that the Commonwealth file on its own behalf, or in cooperation with the original plaintiff, a memorandum as set forth in the adjudication filed in the original proceedings.